W. G. LeDUC, Receiver, v. JAMES I. MOORE et al.

*Banks—Discount—Agency—Evidence—Presumption—Assignment of Notes.*

J. executed his promissory note to M., who, for value and before maturity, endorsed it, for his own benefit, to a bank of which he was president, and, together with the cashier, constituted the discount committee, and as such committee, M. participated in discounting the note: *Held*, that the bank took the note subject to all the equities by which M. was bound, the presumption being that his knowledge was the knowledge of the bank. (*Bank* v. *Burgwyn*, 110 N. C., 267, distinguished.)

CIVIL ACTION, tried at April Term, 1892, of FRANKLIN Superior Court, *Bryan, J.*, presiding.

LeDuc *v.* Moore.

The case is stated in the opinion.
The defendant appealed.

*Mr. T. H. Sutton,* for plaintiff.
*Mr. N. Y. Gulley,* for defendants.

SHEPHERD, J.: James I. Moore executed a promissory note to E. F. Moore, who, for value, and before maturity, endorsed it, for his own benefit, to the plaintiff bank. The said E. F. Moore was the president of the bank, and he, together with the cashier, by the custom of the bank, alone constituted its discount committee. The said Moore actually participated as a member of such committttee in the discounting of said note. The question presented, is whether the bank is affected with notice of any defence existing in favor of the maker as against the payee at the time or before notice of the endorsement.

In *Bank* v. *Burgwyn* 110 N. C., 267, it was held that a bank was not affected with constructive notice by reason of the actual knowledge of its president, when the latter was dealing with it in his individual capacity, and not acting officially for the bank in any manner concerning the particular transaction. In the opinion of the Court it was stated that ,the principle upon which rests the doctrine of constructive notice in such cases is that agents are presumed to communicate all such information as they may acquire in the line of their duty to their principals, because it is their duty to do so; but that no such presumption can exist where the agent is dealing with the principal in his own behalf. "His interest is opposed to that of the corporation, and the presumption is, not that he will communicate his knowledge of any secret infirmity of the title to the corporation, but that he will conceal it." *Barnes* v. *Gas Light Company,* 27 N. J. Eq., 33.

Whether the bank would have been affected with con-
structive notice had the president acted in his official capacity
in discounting the paper in which he was known to be inter-
ested, is a point we did not undertake to determine, though
upon a cursory examination it seemed to us that the author-
ities were in favor of the proposition. A more careful inves-
tigation, however, of the subject, discloses much conflict of
judicial decision with many very respectable authorities
sustaining the opposite view. Upon so important a question,
involving the rights of other possible litigants, who have
had no opportunity of being heard, we forbear the expres-
sion of an opinión at this time—for, even admitting that,
under ordinary circumstances, the latter doctrine is the cor-
rect one, and the bank would not be affected with notice,
the reason of the principle would forbid its application to
the facts of the present case. The principle is based upon
the presumption that a majority of the members of the dis-
count committee, being aware of the adverse interest of their
associate, were in no way influenced by him in their action,
and as he was treated as a stranger to the bank in the par-
ticular transaction, it would be unfair to assume that he
imparted his knowledge to its officials. In other words, the
theory is that he cannot be considered, in such a case, as
having acted influentially as an officer of the bank. Our case
is quite different, as here the discount committee consisted of
Moore and the cashier alone, and it required the active official
participation of the former in order to discount the paper.
Here, then, we have as undisputed facts the active and essen-
tial participation of the president as a director, and also his
actual knowledge. This leaves no room for the operation
of any presumption, and the bank cannot escape its liability
for the misconduct of one whom it has placed in such a
highly responsible position. If loss must ensue by reason
of the bad faith of Moore, it would seem clear that it should
be borne by the bank, which, by reason of its selection of an

improper agent, has caused a loss "which would not have resulted if the instrument employed -by it had come up to the standard of good faith, which it is one of the great objects of the law to secure in commercial dealings." ˙ Morse on Banks, 110.

There must be new trial.                                    Error.