P. W. WILLIAMS v. PEOPLES BANK AND CLAYTON MOORE, TRUSTEE.

(Filed 17 September, 1924.)

**1. Principal and Agent—Banks and Banking—Cashier—Misappropriation of Funds.**

Where a customer of a bank has his note for borrowed money accepted by a bank, and delivers it to its cashier for discount, the cashier is the agent for the bank to pay the proceeds over to the customer, or to place it to his credit at the bank; and where the cashier instead misappropriates it to his own use, he is acting within the scope of his agency as cashier of the bank, and applying the general principle relating to principal and agent, the bank is liable to its customer for the money thus misapplied. *Grady v. Bank,* 184 N. C., 158, cited and distinguished.

**2. Same—Mortgages—Deeds in Trust—Equity—Injunction.**

Where the cashier of a bank acting within the scope of his authority has misappropriated the funds paid to him, to take up the borrower's note given to the bank secured by a mortgage, the foreclosure of the mortgage will be enjoined in the suit for that purpose brought against the bank by the maker of the note.

APPEAL by defendants from *Lyon, J.,* May Special Term, 1924, of MARTIN.

The material facts are:

That Pleny Peele executed deed to P. W. Williams on 30 October, 1919, conveying 33 acres of land for a consideration of $6,000.

That P. W. Williams gave to Pleny Peele note for $1,250.15 to cover cash payment, with C. H. Godwin as endorser thereon, said note being dated 30 October, 1919.

That under date of 8 November, 1919, P. W. Williams executed his note to the Peoples Bank for $1,400, with deed of trust on certain land to Clayton Moore, trustee, as security. That this note has not been paid. J. G. Staton, since the action was brought, was appointed receiver for the defendant bank, and, by order of court, made a party defendant.

This action is brought by plaintiff against defendants to restrain them from selling the lands as set out in the deed of trust to Clayton Moore, trustee, to secure the note to the Peoples Bank for $1,400, dated 8 November, 1919.

The plaintiff contends that the evidence shows that he bought a piece of land from Mr. Peele, and that to raise the first payment he gave Peele his note, with one, C. H. Godwin, cashier of defendant bank, as surety, for $1,250.15, and that to enable Peele to get the money he gave to Moore, as trustee for the bank, a deed of trust to secure the note he made to the bank for $1,400, which covers interest, discounts, registration fees, etc. He contends that this note which he made to the bank after he had a conversation with Mr. Staton, the president, and Godwin, the cashier, was to put it in the bank for the purpose of raising twelve hundred and fifty and 15/100 dollars to pay Peele, and that is the last he had to do with it. He contends that the evidence shows that instead of the bank putting it to his credit, or paying it over to Peele and taking up the note that he had given Peele, Godwin, the cashier, took the money himself and placed it to his own credit and converted it to his own use. The plaintiff contends that he does not owe the bank anything because the bank has never paid anything to him or to Peele on this note.

The contention of the bank is that the bank knew nothing of Godwin being on the Williams note until after Godwin had left, and contends that the bank knew nothing of Godwin taking this money and putting it to his individual account until after he had left, and that Godwin was acting for himself and the plaintiff, and not for the bank.

The issue submitted to the jury was: "Is the plaintiff indebted to the defendant, J. G. Staton, receiver, on account of the note dated 8 November, 1919, if so, in what amount?"

The court below charged the jury as follows: "The court charges you that if you find from the evidence and by the greater weight thereof, the burden being on the plaintiff, that after plaintiff executed and delivered note and mortgage in controversy to the bank that Godwin, the cashier of said bank, converted said funds to his own personal use instead of giving the plaintiff credit or paying plaintiff the money, then it would be your duty to answer the issue 'no,' otherwise, you would answer it, 'yes'."

The jury answered the issue "no." The court below rendered the following judgment: "It is ordered and adjudged that defendant recover nothing on note and mortgage set out and described in complaint for $1,400. And it is further ordered and adjudged that the said note and mortgage for $1,400 executed by P. W. Williams and wife, dated 8 November, 1919, be declared null and void and that the same be surrendered to plaintiff and that plaintiff recover cost."

The defendants prayed the court to give the following instruction: "If the jury believe the evidence and find the facts to be as it tends to show, the jury should answer the issue, 'Yes, $1,250.15, with interest from 1 January, 1921'."

The defendants excepted and assigned as error the refusal of the court below to give the instruction prayed, the charge as given, the refusal to set aside the verdict as a matter of law, and the judgment as signed by the court, and appealed to the Supreme Court.

*Critcher & Critcher and Martin & Peel for plaintiff.*
*Dunning, Moore & Horton, and Stephen C. Bragaw for defendants.*

CLARKSON, J. The only question involved in this controversy is: "Was C. H. Godwin, the cashier of the defendant bank, the agent of plaintiff, P. W. Williams?" If he was, the plaintiff cannot recover. If he was the agent of the bank, the plaintiff can recover.

"The cashier of a bank is the chief executive officer. Still he is but an agent of the bank, and his acts are governed by the general rules applicable to agents, and if he exceeds his authority his acts will not bind the bank." 3 R. C. L., sec. 71, p. 444.

When the plaintiff delivered to defendant bank's cashier, Godwin, the $1,400 note and deed in trust, and the cashier accepted it, Godwin was the agent of the bank. There is no question about the bank making the loan. J. G. Staton testified: "This particular note went through on 10 November, 1919, and was approved by the finance committee 2 February, 1920. That is the signature of some of them approving the notes. Above my signature is written 'approved.' I do not know what date it was approved."

In *Goshorn v. Peoples Nat. Bank,* 32 Ind. App., 428 (102 Amer. State Reports, 251), it was said: The bank "selected its own cashier, and held him out to the world as deserving of confidence. Those who deal with persons occupying such responsible positions have a right to rely upon their integrity, and do so constantly. Depositors do not deal at arm's length with the cashier. In language used by *Justice Paxon* of the Supreme Court of Pennsylvania: 'It would be monstrous to allow them to take advantage of the ignorant and unwary, by reason

of their position, and the confidence it inspires.' *Zeigler v. First Nat. Bank,* 93 Pa. St., 393, 397; *Steckel v. First Nat. Bank,* 93 Pa. St., 376; 39 Am. Rep., 758; *City Nat. Bank v. Martin,* 70 Tex., 643; 8 Am. St. Rep., 632; 8 S. W., 507."

In the instant case the plaintiff was borrowing the money from the bank to pay a note made by himself to Pleny Peele, on which C. H. Godwin was endorser. The note of Williams was made to defendant bank, secured by deed in trust. The record shows that the cashier had authority to make the loan, as the president of the bank and the finance committee approved it. The cashier, Godwin, representing the bank had discounted the note for the bank and, after taking out the interest, etc., had misappropriated and converted the balance to his own use. He was the agent of the bank to give the plaintiff credit for it or to pay plaintiff the money or to pay the Peele note and mortgage. He did neither, and the bank is liable for the conversion and misappropriation of its agent, the cashier. It is immaterial that Godwin was endorser on the Peele note.

We do not think the case of *Grady v. Bank,* 184 N. C., 158, is an authority in this case. In that case (at p. 162) the Court says: "It is a well settled principle of law that the cashier cannot bind the bank by his acts in respect to matters in which he is personally interested, and third persons are bound to know that the cashier has no authority to use the funds of the bank for his own benefit."

In the case at bar the cashier was not using the funds of the bank for his own benefit. He misappropriated and misapplied the plaintiff's money contrary to the contract as cashier of the bank—in the scope of his employment—ratified by the president and finance committee—that he made with plaintiff, for which wrong the bank is liable. *LeDuc v. Moore,* 111 N. C., 516; *Phillips v. Hensley,* 175 N. C., 23.

For the reasons given, there is

No error.