JERRY W. WHITTEN v. BOB KING'S AMC/JEEP, INC. AND R. L. KING, JR.

No. 7621SC125

(Filed 21 July 1976)

1. Corporations § 25— contract in excess of president's authority — corporation not liable

In an action on a contract purportedly made for a corporation by its president, summary judgment was properly entered on behalf of the corporation where the corporation established that its president had no authority to make the contract and plaintiff offered nothing of substance to show that the president did have such authority.

2. Contracts § 12— ambiguous contract — construction — genuine issue of material fact

A genuine issue of material fact was raised as to whether a written contract constituted a loan or an agreement to convey stock when issued where the terms of the agreement were ambiguous, and extrinsic evidence relating to the agreement was competent to clarify its terms.

3. Corporations §§ 8, 25; Principal and Agent § 11— contract in excess of authority — liability of corporate president

A corporate president who exceeded his actual authority in executing a contract with plaintiff is personally responsible to plaintiff unless he is absolved of such liability by a contract provision stating, "This holds no responsibility over [the corporate president] individually but only to the Corporation," and a genuine issue of material fact was raised as to the meaning and effect of such provision.

APPEAL by plaintiff from *Seay, Judge.* Judgment entered 17 November 1975 in Superior Court, FORSYTH County. Heard in the Court of Appeals 14 May 1976.

In this action plaintiff seeks to recover the value of certain stock in defendant corporation, or, alternatively, to compel transfer of capital stock in the corporation. The complaint, filed 14 February 1975, alleges in pertinent part:

On or about 4 November 1968 plaintiff and the corporate defendant, acting through its president, defendant King, entered into a written contract in words and form as follows:

LETTER

To Whom it may concern:

This is to verify that Jerry W. Whitten did invest five thousand dollars in Triangle Motor Sales Inc. This money

---

---

was loaned to R. L. King, Jr. until such time as stock could be issued in the company which will be after American Motor Sales Corp. has been bought out. This money & any or all interest at 6% annually or dividends which would be due if this stock were in effect at present time. This to be based on a percentage of the capital which was used to start operation of Triangle Motor Sales Inc. May 1968. The interest or dividends will be used to purchase further interest in the company if Mr. Whitten so desires. This holds no responsibility over Mr. King personally but only to the Corporation of Triangle Motor Sales Inc.

s/ R. L. KING, JR.
Pres.
Triangle Motor Sales Inc.

(Defendant corporation is a successor to Triangle Motor Sales, Inc.)

In August of 1974 payment of the initial loan from American Sales Corporation to the corporate defendant was completed. At that time plaintiff made demand on defendants to issue him his stock certificate representing his interest in defendant corporation but defendants have failed and refused to issue the certificate. The net worth of defendant corporation is approximately $380,000; the initial capital investment in the corporation was $20,000, $5,000 of which was paid by plaintiff, thereby entitling him to a one-fourth interest in defendant corporation. Plaintiff has demanded that defendants pay him $95,000, the value of his one-fourth interest, but defendants have failed and refused to do so. He asks for monetary judgment against defendants for $95,000 or, in the alternative, that defendants be required to convey to him one-fourth of the corporate stock in defendant corporation.

In an amendment to the complaint, plaintiff alleges an additional alternative cause of action summarized in pertinent part as follows: At the time he executed the written contract above set out, defendant King represented to plaintiff that he was president of the corporate defendant's predecessor and had authority to bind the corporate defendant. Plaintiff is now informed and believes that defendant King exceeded his authority in entering into the contract thereby rendering him personally responsible for carrying out the terms of the contract. Plaintiff renews the prayer for relief set out in the original complaint.

Defendants filed separate answers. In its answer the corporate defendant asserted that the purported contract is only a memorandum of a loan by plaintiff to defendant King and is legally insufficient as a stock agreement; however, should it be determined that the writing is a contract, corporate defendant is not bound by it because defendant King acted outside the scope of his authority and plaintiff had full knowledge of such lack of authority. In his answer, defendant King denies personal liability in view of the specific provision of the alleged contract.

Defendants filed motions for summary judgment. They also filed an affidavit of defendant King stating that neither he nor corporate defendant had ever entered into a stock purchase agreement with plaintiff; that the transaction was a loan to corporate defendant; that it was his and plaintiff's intention that defendant King would not be personally liable on the loan; that corporate defendant is not liable because at the time the loan was made corporate defendant was controlled by American Motors, defendant King owned no voting stock in corporate defendant, had no authority to obligate corporate defendant for the issuance of stock, and plaintiff had full knowledge of his lack of authority.

Plaintiff filed an affidavit stating that defendant King advised him at the time of the transaction that plaintiff would be issued stock as soon as American Motors was paid off; that he (plaintiff) borrowed the $5,000 at ten percent interest, thereby indicating that he had never considered the transaction a mere loan bearing six percent interest.

On deposition plaintiff testified that in 1968 defendant King was attempting to purchase a franchise from American Motors who required him to put up $20,000 in order to obtain a $100,000 loan; that at King's invitation, plaintiff invested $5,000 of the required $20,000 but had to be a silent partner because American Motors wanted King to be the sole owner; that King drafted the letter agreement; and that King had the authority to enter into a contract as envisioned in the letter and to do whatever else he wanted to since the business was his.

Defendant King testified on deposition that in 1968 he was president of corporate defendant but American Motors held all the voting stock and he owned only some nonvoting stock; that he had a board of directors to answer to at that time and had no authority to obligate corporate defendant; that since the

loan to American Motors was paid off in 1974 he now owns all of the voting stock of corporate defendant; that corporate defendant's net worth is now $175,000; and that he drafted the letter agreement.

The court granted defendants' motions for summary judgment and from judgment dismissing the action, plaintiff appeals.

*Henry C. Frenck for plaintiff appellant.*

*White and Crumpler, by Fred G. Crumpler, Jr., G. Edgar Parker, and Michael J. Lewis, for defendant appellees.*

BRITT, Judge.

By his sole assignment of error plaintiff contends the trial court erred in entering summary judgment in favor of defendants. We agree with the trial court with respect to the corporate defendant but hold that the court erred in entering summary judgment in favor of defendant King.

Summary judgment is appropriate ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56 (c). In ruling on a motion for summary judgment, the court does not resolve issues of fact and must deny the motion if there is any genuine issue of materal fact. *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972). The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact, and the papers supporting the movant's position are closely scrutinized while the opposing papers are indulgently treated. *Van Poole v. Messer,* 19 N.C. App. 70, 198 S.E. 2d 106 (1973) ; *Miller v. Snipes,* 12 N.C. App. 342, 183 S.E. 2d 270 (1971), *cert. denied,* 279 N.C. 619, 184 S.E. 2d 883 (1971).

[1] When the stated principles are applied to the case at bar, we think the corporate defendant clearly established that as to it defendant King had no authority to make the alleged contract, and plaintiff offered nothing of substance to show that he did have that authority. Therefore, we hold that entry of summary judgment in favor of corporate defendant was proper. However,

application of the same principles lead us to a different conclusion with respect to defendant King.

To say that the alleged written contract is unclear and ambiguous would be an understatement. It begins by saying that plaintiff was *investing* $5,000 in the corporation headed by defendant King. It then states that money was "loaned" to defendant King but in the same sentence refers to the issuance of stock. The succeeding three sentences appear to relate to stock in the corporation and the amount of stock that plaintiff would be entitled to receive.

In 2 Strong, N. C. Index 2d, Contracts § 12, pp. 311-12, we find: "Where the language of a contract is plain and unambiguous the construction of the agreement is a matter of law for the court, and a patent defect or omission cannot be cured by matters outside the instrument. However, if the contract terms are ambiguous, extrinsic evidence relating to the agreement may be competent to clarify its terms, and to have its meaning ascertained by the jury under proper instructions by the court."

[2]  Plaintiff contends that under his agreement with defendant he is entitled to stock in defendant corporation for his $5,000; defendant King contends that the $5,000 was a loan. Due to the ambiguity of the written contract, we hold that a genuine issue of material fact is raised and extrinsic evidence relating to the agreement would be competent to clarify its terms.

[3]  That brings us to the question of defendant King's liability. In 19 Am. Jur. 2d, Corporations § 1348, p. 752, we find: "The general rule of agency—that one who undertakes to act without authority or who exceeds the authority actually delegated to him is personally responsible to the person with whom he is dealing—is applicable to unauthorized contracts entered into by officers and agents of corporation. . . . "

The stated rule applies here unless the last sentence in the alleged contract absolves defendant King of all liability. That sentence reads: " . . . This holds no responsibility over Mr. King personally but only to the Corporation of Triangle Motor Sales Inc."

We think the meaning of the quoted sentence is ambiguous and raises another issue of material fact should the jury first

determine that the transaction constituted an agreement to convey stock and not a loan. Considered in the context of the overall transaction, and particularly the indication that plaintiff was "investing" $5,000 in the corporation, the sentence is capable of the construction that its purpose was to insure that plaintiff would not expect defendant King, individually, to repay the $5,000 should the investment prove unsound.

We have not attempted to suggest all issues that might arise in the trial of this action. We have merely pointed out two genuine issues of material fact that appear from the materials presented at the hearing on defendants' motions for summary judgment.

For the reasons stated, the judgment with respect to corporate defendant is affirmed. As to defendant King, the judgment is vacated and the cause is remanded for further proceedings consistent with this opinion.

Judgment vacated and cause remanded.

Chief Judge BROCK and Judge MARTIN concur.